# LAW OFFICES OF IRA M. SIEGEL
INTELLECTUAL PROPERTY PROTECTION AND ENFORCEMENT
PATENT, TRADEMARK AND COPYRIGHT LAW

**433 N. Camden Drive, Suite 970**
**Beverly Hills, California 90210**
Tel:   310-435-7656
Fax:   310-657-2187
email:  irasiegel@earthlink.net

March 18, 2013

Hon. Roger W. Titus, United States District Judge
Hon. Paul W. Grimm, United States District Judge
United States District Court
Greenbelt Division
6500 Cherrywood Lane
Greenbelt, Maryland 20770

    Re:   Malibu Media, LLC v. John Doe Cases in the District of Maryland

Dear Judges Titus and Grimm,

The undersigned is among those invited to file amicus curiae responses to the Court's March 1, 2013 Memorandum, and is an attorney of record for respective plaintiff's in three cases pending in this District, namely:

    *Metro Media Entertainment, LLC* v. Steinruck, Case No. 8-12-cv-00347-DKC
    *Third Degree Films v. Named Defendant*, Case No. 8-12-cv-00349-JFM
    *Patrick Collins, Inc. v. Osburn,* Case No. 8-12-cv-01294-PWG

The undersigned requests that he be allowed to **make an oral presentation** at the hearing.

The undersigned also requests that the Court grant him an enlargement to 7 of the pages allowed for this amicus curiae letter.   As the Court noted, the issues it presented are important, and it has posed six questions.

The following are the undersigned's responses to the questions posed by the Court:

I.    *What is Malibu Media's affiliation, if any, with Patrick Collins, Inc., Third Degree Films, Inc., K-Beech, Inc., Hard Drive Productions, Inc., Raw Films, Ltd., and/or AF Holdings, LLC?*

Each of Metro Media Entertainment, LLC, Third Degree Films, Inc. and Patrick Collins, Inc. have had many copyright infringement cases.   This is unsurprising in view of the very large amount of titles they produce and the rampant copyright infringement that, as discussed below, has been occurring.   Attorneys who have represented Malibu Media have also represented Third Degree Films, Inc. and Patrick Collins, Inc. in some of their cases. To the knowledge of the undersigned, none of Patrick Collins, Inc., Third Degree Films, Inc. and Metro Media Entertainment, LLC have an affiliation with Malibu Media.

II. *Is there any method other than using full discovery to determine if a John Doe Defendant identified as the subscriber to a particular IP address is the same person who allegedly used that IP address to download the copyrighted work(s)?*

The answer is generally "no" as it is in many other tort cases.   ([C]opyright infringement is a tortious interference with a property right for which Congress created the remedy for damages." *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 120 (4th Cir. 1981).) As in other tort cases that are not resolved by settlement, there is a very high risk that the tortfeasor will deny liability.   Let us consider an analogous example:

> One night there was a automobile collision in California, with a BMW negligently entering the Santa Monica Freeway at high speed and attempting to cross too many lanes.   In doing so, the left rear of the BMW clips the right front of an 2008 Rolls-Royce Phantom which in turn spins and becomes mangled against the freeway divider wall.   The Phantom is a total loss, with damages exceeding $255,000.   Fortunately, neither the driver nor passengers in the Phantom were injured.   A witness noted the license plate of the BMW, which continued driving on. No one could identify the driver of the BMW, nor could they tell whether or not passengers were in it.
> Now, California law provides that an owner of a car is liable for damage caused by his car; however the amount of his liability is limited to $5,000 for property damage if he were not the driver and was not otherwise negligent in its operation. California Vehicle Code § 17151(a).
> A check of California DMV records the next morning provides the name and address of the BMW owner.   Investigators show up that day at the address, which is several miles from the collision, and find that it is a huge, multi-bedroom home owned free and clear by the same person who is the registered owner of the BMW, and is occupied by that owner and a dozen adult roommates who rent space in the home. The owner states that he was sleeping the whole night and that if his car was involved in an accident, the driver just must have been one of his roommates, all of whom are allowed to drive his car, or perhaps someone from the neighborhood who sneaked in and took the keys off his desk in his second floor den/office where he usually leaves them.   He also acknowledges that he does have insurance, but only the $5,000 minimum required for property damage under California Vehicle Code § 16056(a).
> So, the owner says, "Unless you can prove that I was driving my BMW that night or that I was somehow negligent in its operation, I am free from liability for over $250,000 in damages even if my car were involved in last night's collision."
> With no bodily injury at stake, and realizing that the owner of the Phantom has civil remedies available to him, and having to deal with its own over-loaded case load, the Los Angeles Police Department exercises prosecutorial discretion and declines to pursue even the crime of leaving the scene of an accident.

With over $250,000 (i.e., over a quarter of a million dollars) in damages at stake, the owner of the Phantom (or his insurer) will bring a lawsuit against the owner of the BMW, and if the Phantom owner is a visitor from Maryland, he may very well bring suit in the United States District Court for the Central District of California.   Whether he is in state court or federal court, the Rolls-Royce owner will engage the discovery processes available to him, including demanding an opportunity to examine the BMW, the cell phones and cell phone records of the BMW owner and of his roommates, and video cameras near the scene of the accident, and deposing the BMW owner and his roommates.   For some of this discovery, subpoenas may be required.   And we would not be surprised if the BMW owner continued to deny being involved in the collision even if a few establishments in the neighborhood of the collision that had video security equipment showed that he had frequented that neighborhood on various evenings.

The same situation is often present in cases such as the copyright cases before the Court, with the IP address/date-time combination being similar to the license plate and the subscriber being similar to the BMW owner.   Of course, the subscriber often lives alone.   See, http://www.time.com/time/magazine/article/0,9171,2108055,00.html (According to 2011 census data, about 28% of households comprise only one person, and 28% comprise only a childless couple).

In cases such as this, statutory damages are available to plaintiffs.   While a quarter of a million dollars might not be involved in a single infringement, statutory damages range from $750 to $30,000, and could range up to $150,000 for willful infringement.   None of us should be surprised when an Internet subscriber, who refuses to pay the few dollars for a DVD or an online membership and instead "anonymously" downloads movies, declines to admit infringement and opts to make a studio jump over and through all the hurdles and hoops any other tort plaintiff must jump over and through to make his case.

In any event, like any other tort plaintiff, studios should be allowed to bring infringing Internet subscribers (and/or, after further discovery, their roommates) to trial and to have all evidence, including defendants' demeanors as they testify, placed before the jury to determine whether the accused did infringe and how much damages he should pay.

III.  *Does a complaint alleging copyright infringement state a plausible claim under federal pleading standards when it identifies the Defendant only by an IP address, and not a name, address, or other identifying information?*

The answer is "yes."   The Declaration of Jon Nicolini (sometimes referred to as the "Technology Declaration") is of record in Case No. 8-12-cv-01294-PWG, before Judge Grimm, .   It describes in detail how the infringement is discovered and how, due to the properties of the BitTorrent system used by infringers, their IP addresses can be seen.   While the defendant's name is missing, it is clearly obtainable from the ISP, who will only respond to a subpoena, and a case must be pending for a subpoena.   See, *Valentine v.*

*Roanoke County Police*, 2011 U.S. Dist. LEXIS 83621 (W.D. Va. July 29, 2011): "Plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Citing, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

IV.  *A number of federal courts have been reluctant to grant a subpoena to an ISP when confronted with a request similar to that made by Malibu Media in these cases. See, e.g., Patrick Collins, Inc. v. Doe 1, No. 12-cv-1154 (ADS) (GRB), __ F.R.D. __ , 2012 WL 5879120, at \*4-\*5 (E.D.N.Y. Nov. 20, 2012) (noting some courts' "skepticism of the use of IP addresses to identify file sharing defendants in cases involving pornographic films," and finding that an IP address alone is insufficient to establish a reasonable likelihood that it will lead to the identity of the defendants who could be sued).*

The undersigned submits that any court that states that "an IP address alone is insufficient to establish a reasonable likelihood that it will lead to the identity of the defendants who could be sued" is just plain wrong, and any court that uses such rubric to deny issuance of a subpoena that would be served on an ISP to obtain an accused subscriber's information is engaging in conduct that should be anathema to the judiciary. That is, such a court is "prejudging," it is making and granting its own motion for summary judgment in favor of defendant without giving plaintiff a chance to find information about a defendant who tries to act anonymously.   This, of course, is completely inconsistent with Rule 56(d) of the Federal Rules of Civil Procedure which requires that a nonmovant be given an opportunity to obtain information to make its case.   The discovery sought will let plaintiff obtain the name of the subscriber, and as in the case of the hypothetical automobile collision discussed above, the subscriber, like the car owner, either is the infringer or very likely knows who the infringer is.

**Stated another way, the courts should not be granting compulsory, and free, licenses to infringers just because they accomplish their infringement anonymously.**

Attached hereto as Exhibit A is the "Technical report: An Estimate of Infringing Use of the Internet," a January 2011 Report by Envisional Ltd. that was commissioned by NBC Universal.   The authors of that report estimated that, even **excluding adult film** content, "The transfer of infringing content located on [peer to peer] networks comprised 13.8% of **all** internet traffic" in the United States.   See page 3 of the Report.   Obviously, if adult film content were included, that percentage would be much higher.   So, clearly the response to any claim that it was the "mysterious one-armed hacker" who did the infringement, is that there clearly is no evidence that there are a sufficient number hackers available to account for even a small fraction of the infringements that are occurring.

Case 8:13-cv-00360-RWT   Document 12   Filed 03/18/13   Page 5 of 7

Hon. Roger W. Titus, United States District Judge
Hon. Paul W. Grimm, United States District Judge
March 18, 2013
Page 5 of 7

V.    *If Malibu Media is granted a subpoena to serve on an ISP and determines the name and address of the IP subscriber, what does Malibu Media intend to do with that information?*

The undersigned obviously does not speak for Malibu Media. However, the Court obviously knows that the respective plaintiff's in the undersigned's Maryland suits have proceeded to litigate.

VI.    *. . . Particularly troubling for courts is the high probability of misidentified Doe defendants (who may be the bill-payer for the IP address but not the actual infringer) settling a case for fear of the disclosure of the allegations against them or of the high costs of litigation.") (citations omitted). Please explain how issuing a third-party subpoena in these cases, which allege that defendants illegally downloaded pornographic material, could be limited so as to avoid any potential for exploitation.*

The undersigned does not concur that there is a high probability of misidentified Doe defendants (who may be the bill-payer for the IP address but not the actual infringer) settling a case for fear of the disclosure of the allegations against them or of the high costs of litigation. As indicated above, many American households are occupied by only one person. Second, if the Doe defendant is the bill payer but not the actual infringer, he or she likely knows who did the infringing and/or is vicariously liable for copyright infringement. So, even a purportedly "misidentified" Doe defendant is not a victim of the studios, that Doe defendant has become a willing "victim" of the person for whom he is covering. Again, however, there is no evidence that a significant number of defendants are being misidentified, particularly in view of the large number of infringements that are known to occur.

**Courts should not make "perfect the enemy of the good."**

In this regard, "flash mob" shoplifting has occurred in Maryland. See, http://www.youtube.com/watch?v=bHyug2PvpB, and http://blogs.findlaw.com/free_enterprise/2012/07/5-tips-to-prevent-flash-mob-shoplifters.html. Should courts refuse to allow prosecution of any of the suspected perpetrators because it might turn out some innocent people are arrested? The undersigned thinks the answer should be "no," and that prosecution should be allowed to proceed responsibly.

As for the issue of preventing any potential for exploitation, the risk of that occurring would be reduced simply by plaintiff's engaging honestly with prospective defendants. Also, suits could be conducted under seal, or at least with a defendant's identifying information kept under seal (although the undersigned believes that that (i) makes discovery during the case unreasonably difficult, and (ii) in modern times is unnecessary (see, *Does I*

Case 8:13-cv-00360-RWT   Document 12   Filed 03/18/13   Page 6 of 7

Hon. Roger W. Titus, United States District Judge
Hon. Paul W. Grimm, United States District Judge
March 18, 2013
Page 6 of 7

*thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-9 (9th Cir. 2000), *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997), *K-Beech, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 136528, 4-5 (W.D.N.C. Nov. 28, 2011), and *Liberty Media Holdings v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05*, 2011 U.S. Dist. LEXIS 125512, 20-25 (D. Mass. Oct. 31, 2011)).

Further, the settlement offers with which the undersigned is familiar are not exploitive. They are consistent with the desire of most courts that matters be settled. In this regard, see Doc. 67 in the above-identified Case No. 8-12-cv-00347-DKC (reported as *Metro Media Entm't, LLC v. Steinruck*, 2012 U.S. Dist. LEXIS 177509, 17-19 (D. Md. Dec. 14, 2012)):

> "The only facts set forth by Defendant that could potentially support an abuse of process claim relate to the issuance of the subpoena to Defendant's ISP and the ensuing settlement letter transmitted by Plaintiff. The lawful purpose of the subpoena was to compel the ISP to divulge Defendant's name and address, which, in turn, would enable Plaintiff to file an amended complaint naming the proper defendants and requesting the issuance of summonses. While the fact that Plaintiff also used that information to convey a settlement offer is clearly 'outside the scope' of the subpoena, the purpose of the settlement letter was not 'to attain some collateral objective.' *Palmer Ford*, 298 Md. at 512-13. Indeed, it proposed to resolve the suit. The only threat contained in Plaintiff's 'extortive shakedown letter,' as Defendant calls it, is that Plaintiff would "formally name [Mr. Steinruck] as a defendant" if he declined to settle. (ECF No. 23-3). Insofar as this constitutes a 'threat,' it is no different from those routinely presented in demand letters to potential defendants prior to the filing of law suits in court. While it is likely true, given the salacious nature of the film, that Plaintiff had substantial leverage in settlement discussions, there is nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation, and the fact that Plaintiff may have had an ulterior motive is inconsequential in the abuse of process analysis. *See Wallace v. Mercantile County Bank*, 514 F.Supp.2d 776, 793 (D.Md. 2007) ('[n]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be') (quoting One Thousand Fleet, 346 Md. at 38 (internal marks omitted)). Moreover, Defendant has not suffered an 'arrest or a seizure of property,' as required to establish a claim of abuse of civil process under Maryland law. *One Thousand Fleet*, 346 Md. at 48. To the extent that he has suffered reputational harm from the association of his name with the unauthorized downloading and/or uploading of pornography, his injury was self-inflicted. A procedure was put in place by which Defendant could have vindicated his vehement denials of liability without publicly revealing his identity. He elected to reveal his name, however, and he cannot now reasonably assert that damages attributable to this revelation were caused by Plaintiff."

Conclusion

      These cases are difficult cases for copyright plaintiffs, particularly because the infringers start out with a cloak of anonymity.   Infringers should not be rewarded with a free license to infringe.

      Respectfully submitted,

Ira M. Siegel
Attorney for Plaintiffs in
*Metro Media Entertainment, LLC* v. Richard Steinruck, United States District Court for the District of Maryland Case No. 8-12-cv-00347-DKC
*Third Degree Films v. Named Defendant*, United States District Court for the District of Maryland Case No. 8-12-cv-00349-JFM
*Patrick Collins, Inc. v. Osburn,* United States District Court for the District of Maryland Case No. 8-12-cv-01294-PWG