**BOOTH SWEET LLP**

32R Essex Street Cambridge, MA 02139
T: 617.250.8602 | F: 617.250.8883 | www.boothsweet.com

RECEIVED IN THE CHAMBERS OF
ROGER W TITUS

MAR 1 8 2013

UNITED STATES DISTRICT JUDGE

March 15, 2013

U.S. District Court, District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

**RE: Malibu Media, LLC v. John Doe Cases in the District of Maryland**

Judge Titus:

1. **Plaintiff Cannot, in Good Faith, Claim the Requested Discovery will Identify the Actual Infringer.**

On February 17, 2013, Plaintiff sought leave to take "limited discovery" citing data provided by IPP as the basis for the request. *See e.g., Memorandum*, ECF No. 4. In doing so, Plaintiff misrepresented 1) the information obtained by Plaintiff's investigator is specific enough to identify the particular individuals responsible for infringing Plaintiff's copyright. (ECF No. 4-1 at p. 6); and 2) the defendants cannot be identified until the requested information is subpoenaed from the defendants' ISPs. (*Id.* at p. 7).

Exceptions to the rule against expedited discovery are disfavored. *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir. 1980)). *See also, Kemper Ins. Cos. v. Federal Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) ("Fictitious parties must eventually be dismissed, if discovery yields no identities."); *Tillson v. Odyssey Cruises*, No. 8-cv-10997-DPW, 2011 U.S. Dist. LEXIS 7911, *1 n.1 (D. Mass. Jan. 27, 2011).

The Court should not grant the Plaintiff early discovery to determine defendants' identities because it is clear that the requested discovery will not uncover the identity of the actual infringer. *Kemper Ins. Cos. v. Federal Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) (citing, *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) ("If it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice.")).

As Plaintiff notes, the identity of the Defendants is central to its case. *Memorandum*, ECF No. 4, p.7. However, Plaintiff does not — and cannot — claim that the requested discovery will uncover the identity of the *actual* infringer. As Plaintiff is aware, the subscriber information revealed by the requested ISP discovery:

> "does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individuals who had direct access to Subscribers network."

*Third Degree Films v. Doe*, No. 11-cv-02768-LB, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. Nov. 4, 2011); *In re Ingenuity 13 LLC*, No. 11-mc-0084-JAM-DAD, ECF No. 24 (E.D. Cal. March 21, 2012) ("[T]he only information known to petitioner is the identified IP addresses. … However, that information alone would not reveal who actually downloaded petitioner's work, since the subscriber's Internet connection could have been used by another person at the subscriber's location,

or by an unknown party who obtained access to the subscriber's Internet connection without authorization.").[1]

As an "extraordinary remedy," expedited discovery may not be granted where the requested discovery will not give Plaintiff sufficient information to name any — let alone all — of the actual infringers in this case. Indeed, the fact that out of the 587 actions Plaintiff has filed against thousands of defendants—it has only named 35 individuals—belies any effort by Plaintiff to allege that the discovery *will* lead to identification of the actual infringer or service on a single John Doe.

Rather, at its heart, the expedited discovery sought represents an effort by the Plaintiff to engage in pre-suit discovery for the sole purpose of determining whether a cause of action exists and, if so, against whom the action should be instituted. This is not the proper purpose of a Rule 26(f) motion and is certainly not the intended use of a Rule 45 subpoena. *See generally, Hard Drive Productions, Inc. v. Does 1-130*, No. 11-cv-03826, 2011 U.S. LEXIS 132449, *2-3 (N.D. Cal. Nov. 16, 2011).

Furthermore, Rule 15(c)(3) permits an amended complaint to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party to begin with. *Wilson v. U.S.*, 23 F.3d 559, 563 (1st Cir. 1994). *See also, Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (no relation back when plaintiff initially had no knowledge of defendant's identity); *Bennett v. N.C. DOT*, No. 5-cv-00764, 2007 U.S. Dist. LEXIS 86725, *11-13 (M.D.N.C. Nov. 26, 2007); *Burgin v. La Pointe Mach. Tool Co.*, 161 F.R.D. 44, 47 (D.S.C. 1995).

In this case, there is no "mistake concerning the identity of the proper party," as required by Rule 15(c)(3). Rather, Plaintiff admittedly lacks knowledge of the correct identity of the proper party. In other words, Plaintiff fully intended to sue a specific IP Address, it did so, and the subscriber of that IP Address, admittedly, may turn out to be the wrong party. "We have no doubt that Rule 15(c) is not designed to remedy such mistakes." *Wilson* at 563.

## H. Who is IPP?

An equally pressing topic concerns Plaintiff's affiant IPP. To identify the IP addresses being used to allegedly infringe the Plaintiff's work, Plaintiff hired IPP International UG ("IPP"), also known as IPP Limited, to locate and document infringing copies of its copyright protected works on bit torrent networks. *Complaint*, ECF No. 1 ¶¶ 17-23; *Feiser Declaration*, ECF No. 4-2. On the basis of Mr. Feiser's declarations and IPP's records, Plaintiff files a single civil complaint against numerous individuals and petitions the Court to issue subpoenas to ISPs, seeking contact information for the alleged infringers.

For thousands of defendants, Mr. Feiser testifies on behalf of IPP to have "personally" extracted the data, isolated the transactions, analyzed each BitTorrent piece or viewed each of the movies side-by-side with the digital media file[s] downloaded from each individual alleged infringer. *Feiser Declaration*, ECF No. 4-2 ¶¶ 12, 15-16. It is unclear whether IPP even exists. The address, phone and fax numbers given on its website—www.ippint.de—are in fact those of BSAG Bueroservice24 AG—www.bueroservice24.de—a provider of virtual offices. Given the scarcity of available information regarding IPP, one wonders if it is little more than a shell from under which declarants crawl.

Upon available information, IPP's only other known declarant is Daniel Arheidt. Mr. Arheidt has filed on behalf of IPP in *Voltage Pictures LLC v. Mou Mme UNTEL*, Montreal, Quebec (Aug. 24, 2011). Daniel Arheidt is also a declarant for GuardaLey, International ("GuardaLey"). *Nu Image, Inc. v. Does 1-6,500*, No. 11-cv-00301-RLW, ECF No. 5-2 (D.D.C. Feb. 17, 2011)

GuardaLey, like IPP, is a German technology company that monitors and records online instances of alleged copyright infringement of films. Guardaley is located in Karlsruhe, Germany—

---

[1] *See also, Pacific Century Intern. Ltd. v. Does 1-101*, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. Oct. 27, 2011); *AF Holdings LLC v. Does 1-96*, 2011 WL 5864174, at *4; *Digital Sin, Inc. v. Does 1-5698*, No. C 11-04397 LB, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011).

the same city where Mr. Fieser's declarations for IPP are executed. Similarly, GuardaLey also serves as Voltage's technology company. See *Voltage Pictures LLC v. Does 1-5,000*, 1:10-cv-00873 (D.D.C. 2010). If one also compares the wording of the various declarations of Feiser, Arheidt and Patrick Achache, GuaradLey's owner, entire portions—and at times the entire document itself—are identical.

Baumgarten Brandt, a law firm who had entered into a relationship with GuardaLey, filed suit after it discovered that GuardaLey knew of several flaws concerning how they identified defendants as early as November 18, 2009, but chose not to disclose them. In its appeal to an injunction brought by GuardaLey, Baumgarten asserted that when identifying alleged infringers, GuardaLey:

1. includes mere inquiries, regardless as to whether any file was actually shared;

2. identifies people who neither upload or download;

3. operates a 'honeypot'—that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the file being sought." If the actual file is being offered than an implied license is operative. If it is a garbage file, than no infringement occurs. In either instance, IP addresses are being identified that did not infringe; and

4. does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

*Shirokov v. Dunlap, Grubb & Weaver, et al*, No. 10-cv-12043-GAO, ECF Nos. 55, 55-3, 55-10 and 55-11 (D. Mass. June 6, 2011). On May 3, 2011, the State Court of Berlin found the allegations above to be truthful, concluding in part that GuardaLey's evidence gathering technology does not check whether the accused actually downloaded (or uploaded) content, and ruled against Guardaley. Shortly after these facts came to light, GuardaLey quickly reinvented itself as IPP.[2]

If I can be of any further assistance to the Court, please feel free to contact me.

Respectfully,

Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

---

[2] A partial list of aliases employed by GuardaLey include: DigiProtect, IP Equity, BP Equity, and BaseProtect. See, e.g., *Baseprotect UG v. Does 1- X*, 2:11-cv-03621-CCC-JAD (D.N.J. 2011). Further documentation linking these aliases to GuardaLey can be provided if need be.