

# Locke Lord LLP
Attorneys & Counselors

600 Congress Avenue, Suite 2200
Austin, TX 78701
Telephone: 512-305-4700
Fax: 512-305-4800
www.lockelord.com

Bart Huffman
Direct Telephone: 512-305-4746
Direct Fax: 512-391-4741
bhuffman@lockelord.com

*Via Electronic Mail*

March 18, 2013

Hon. Roger W. Titus and Hon. Paul W. Grimm
United States District Court, District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

Re:  *Malibu Media, LLC v. John Doe* Cases in the District of Maryland
Consolidated Cases including *Malibu Media, LLC v. John Doe*, No. 13-cv-362-RWT

Dear Judges Titus and Grimm:

I submit this letter on behalf of SBC Internet Services, LLC d/b/a AT&T Internet Services (AT&T). As an Internet service provider (ISP), AT&T assigns IP addresses to business and residential customers. In recent years, AT&T has received hundreds of copyright infringement subpoenas seeking the personally identifiable information of thousands of its customers.

Based on its experience in these matters, AT&T is concerned that:

- It appears that many if not most of these lawsuits are actually mere vehicles to collect information from ISPs and monetary "settlements" from the ISPs' customers. The plaintiffs' lawyers often file multiple suits, on an ongoing basis, in federal courts around the country. In the end, unrecoverable defense costs and the stigma of being associated with pornographic content may lead ISP customers to pay the plaintiffs and their lawyers even if they have not committed any wrong and would not be liable if the case were to be tried.

- Neither the Constitution nor laws of the United States grant Article III courts power to authorize private citizens to conduct investigations before a case or controversy has been presented for adjudication. It is unclear that these lawsuits are "cases or controversies" within the scope of Article III. Instead, naming Doe defendants in these cases appears to be an artifice to enable the plaintiffs to obtain the only real relief they want the courts to grant: ex parte orders compelling ISPs to disclose the names of customers to whom demand letters can be sent (and, when phone numbers are provided, to whom debt-collection-type calls can be made). Most of these suits, we believe, are dismissed without any defendants being named or served.

March 18, 2013
Page 2

- The discovery orders in these cases frequently include what are essentially ex parte mandatory injunctions compelling ISPs to deliver notices to customers and reveal customer information to the plaintiffs on a specified schedule, also requiring the ISPs to monitor the litigation for motions by Does on an ongoing basis. Because the ISPs are not named as parties, they are not provided notice and an opportunity to be heard before the ex parte court orders and subpoenas are issued. In theory, discovery-related relief should be subject to the provisions, protections, and objection rights set forth in Rule 45.[1] In reality, the court orders in many of these suits go well beyond mere authorization for the plaintiff to issue subpoenas and instead impose additional requirements, undue burdens, and significant expenses on the ISPs.

AT&T is also concerned by the language of the demands that follow after customer identities are disclosed. The text below is from a letter sent to an AT&T customer (in a case not involving Malibu Media or its attorneys) after AT&T disclosed the customer's name. The text reflects that the plaintiff believes it may not have sufficient information to assert a genuine claim against the customer but has nevertheless been positioned by a federal court to threaten suit:

> At this point, while you are not being directly accused of committing the infringement yourself, **you** are *the only person known to my client who may know the identity of the infringer in this case*....
>
> Please understand the severity of this matter. Under the Copyright Law of the United States, copyright owners like our client may recover $150,000 in statutory damages (in cases where statutory damages are applicable which may or may not be the case here) per infringing file plus attorney's fees in cases [sic], as here, infringement was willful...
>
> With that said, I want to give you a chance to cooperate with us and settle these claims prior to becoming entrenched in long and expense litigation. Our client's settlement offer is $4,000. Should this case proceed without settlement, and should we choose to name and serve you (or a member of your household) in this suit, that settlement will have expired, and the amount our client would be willing to spend would go up in light of the fees and effort put into the case.

(Emphasis in original.) The plaintiff sending this letter has leveraged the federal court order and subpoena to justify threatening the customer with expensive litigation. The letter continues with an oppressive demand that the AT&T customer refrain from deleting any information from any of the customer's computers:

> Please also consider this letter to be formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If

---

[1] AT&T and other ISPs typically do notify their customers of subpoenas. With respect to ISPs that are also "cable operators," the Cable Privacy Act requires such notification. However, we are aware of nothing in the Cable Privacy Act or any other law authorizing courts to *order* non-party ISPs to send any particular communications to their customers.

March 18, 2013
Page 3

> forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation, the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a 'spoliation of evidence claim' against you...

AT&T generally concurs with the reasoning of courts that have severed all but one Doe defendant in each case on joinder or other grounds. In addition, AT&T agrees that protective measures are warranted given the unusual circumstances of these cases. For example, a court might (i) require the plaintiff to demonstrate that its identification of IP addresses is based on accurate technology (including a demonstration that an Internet user associated with a given IP address actually downloaded the entire work); (ii) require the plaintiff to establish that it is entitled to statutory damages or a particular range of actual damages; (iii) require the plaintiff's attorneys to certify that they have no direct or indirect financial interest in the plaintiff or the work; (iv) require the plaintiff and its attorneys to certify that they have not directly or indirectly participated or acquiesced in the introduction of the work into a BitTorrent or similar file-sharing service; (v) require that Rule 45 subpoenas direct the ISPs to produce their customers' personally identifiable information directly to an ad litem attorney, who can notify the customers and advise them of their rights; and (vi) require prior court approval of any settlement demands made to individuals before they enter appearances in the case. Such measures would help to ensure that the plaintiffs and their lawyers in these cases are legitimately seeking to enforce rights with respect to demonstrated infringement, that their claims are backed by credible and probative evidence, and that they are not misrepresenting the nature of the proceedings or the range of potential relief in connection with any settlement discussions.[2]

AT&T does not condone copyright infringement and recognizes that disclosure of an ISP customer's identity may sometimes be necessary to enable plaintiffs to name and serve actual defendants against whom the plaintiffs have bona fide claims. However, AT&T's experience and the growing body of caselaw in Doe cases similar to those at bar suggest that heightened protections are necessary and that courts are correct, absent extraordinary circumstances, to require such cases to proceed, if at all, against only one Doe at a time. AT&T appreciates the opportunity to provide input in Your Honors' consideration of these important issues.

Respectfully submitted,

Bart W. Huffman

---

[2] Many court orders in these cases contain language nominally restricting use of the information received from the ISPs. However, general language such as "information disclosed to the plaintiff in response to a Rule 45 subpoena may be used by the plaintiff solely for the purpose of protecting the plaintiff's rights as set forth in the Complaint" may not have a significant effect. Plaintiffs and their lawyers are incented to construe such language broadly, and not as limiting use for the purpose of naming the alleged infringers as defendants in the case at hand.