# *MADDOX, HOPPE, HOOFNAGLE & HAFEY, LLC.*

*Attorneys & Counselors At Law*
1401 Mercantile Lane, Suite 105
Largo, Maryland 20774
Tel: (301) 341-2580 Fax: (301) 341-5727

May 30, 2013

<u>**VIA CM/ECF**</u>

Attn:   The Honorable Judge Roger W. Titus
       The Honorable Judge Paul W. Grimm
       United States District Judges
       District Court of Maryland
        6500 Cherrywood Lane
       Greenbelt, MD 20770

Re: *Malibu Media, LLC v. John Doe Cases in the District of Maryland*
No. 1:13-cv-00352-ELH (and related cases)

Dear Judge Titus and Judge Grimm:

This letter is in response to the Court's May 16, 2013 Order in which the Court invited counsel to submit any comments that we wished the Court consider regarding the proposed Special Master procedures. Malibu Media respectfully submits the following comments on the Court's proposal to elect a Special Master to proceed over its cases. As an initial note, Malibu Media would like to express its gratitude to the Court for allowing it to provide its position and comments regarding the proposed procedure.

    A.  <u>Filing Under Seal</u>

First, the Court states that "any amended complaint filed by Malibu that identifies a Subscriber by name will be filed under seal to protect against public disclosure." Order at ¶ 3a. While Malibu Media does not object to any efforts by the Court to protect the Defendant's identity from public disclosure, Malibu Media suggests that it may be more efficient to redact the names of the John Doe Defendants, and refer to them by their pseudonym.

From Plaintiff's experience, when filing every document under seal, often the parties may either be delayed from receiving filings, or sometimes altogether miss information that was filed. This can cause delays in responses and create additional work for the Court's clerks. By redacting the John Doe defendant's name and simply referring to him or her as John Doe, the parties and the Court will be able to protect the identity of the John Doe and still proceed in a normal fashion. This will also help avoid any accidental public filings, and allow the parties to serve each other their respective filings via CM/ECF.

B. <u>Procedural Comments Regarding the Court's Order</u>

Second, Plaintiff would like to suggest that the Court provide a time frame for the process outlined in the Court's order so that Plaintiff may reasonably be able to plan for the litigation process, including discovery. Each of Plaintiff's cases has been designed for litigation, and Plaintiff anticipates that several will proceed to trial. If there is not a time line for the Court's initial determination of the plausibility of Plaintiff's Complaint, Plaintiff's case could be delayed for several months, if not years, and Plaintiff may be prejudiced by loss of evidence.

Specifically, Plaintiff would like to determine a procedure if the John Doe defendant does not respond to the letter or contact from the Special Master. From Plaintiff's experience, sometimes a John Doe defendant will not respond to a complaint until he has been served or even until a default judgment is entered against him. If the John Doe defendant chooses to ignore the Special Master's request for information, Plaintiff would like the opportunity to proceed with its case. Plaintiff respectfully suggests that after a designated period of time, if the John Doe defendant does not respond, Plaintiff be allowed to serve the John Doe defendant with the complaint and proceed with the litigation process.

Third, Plaintiff respectfully requests clarification as to whether it will be able to review the information provided by Defendant before making any objections to the Special Master's decision. Paragraph 4 of the Order states:

> If the Special Master concludes that a plausible claim may not be asserted against the Subscriber, he shall file under seal a report containing that conclusion, and the Plaintiff shall file any objection to the report within ten (10) days.

While Plaintiff appreciates the opportunity to object and appeal the decision of the Special Master, Plaintiff believes it is at a disadvantage to properly object if it is not given access to the information provided by the John Doe defendant to the Special Master. Indeed, by not allowing Plaintiff access to any of the information upon which the Special Master bases its decision, the Court will be creating a one way process without Plaintiff's ability to effectively participate. Plaintiff should be able to properly object based on all of the information provided, particularly if the Court's decision would result in the dismissal of Plaintiff's suit.

Allowing Plaintiff to independently review any of the information provided by the John Doe defendants may also curb risk of improper ex-parte communications. Specifically, the Maryland Lawyers' Rules of Professional Conduct state, "[a] lawyer shall not communicate ex parte about an adversary proceeding with the judge or other official before whom the proceeding is pending, except as permitted by law[.]" MD R. CTS. J. AND ATTYS. Rule 16-812, MRPC 3.5. These rules were designed so that one party does not gain an unfair advantage over another. Plaintiff should be made aware of each communication by the John Doe defendant and the evidence put forth so that it can reasonably object if necessary.

Plaintiff suggests that the Court allow Plaintiff to review the evidence submitted by the John Doe defendant, with the John Doe defendant's name and address redacted. This would still prevent Plaintiff from knowing Defendant's identity until the Special Master makes his determination, but allow Plaintiff to better formulate any objection it may have to the Special

Master's report, which Plaintiff assumes will not only set forth a conclusion, but also his basis for reaching a conclusion. Further, after Plaintiff's objection is made, Plaintiff would like the Court to consider an appellate path for Plaintiff, particularly if the Special Master's order would result in effectively disposing of Plaintiff's case.

Finally, Plaintiff respectfully requests that if the Court decides to appoint a Special Master to review each of Plaintiff's cases for plausibility, that the Court extends the Rule 4(m) deadline for any period of time it may take to resolve the decision of the Special Master.

### C. The Plausibility Standard

In the Court's May 16, 2013 Memorandum, the Court specifically asked counsel to "address the criteria to be used by the Special Master to determine whether a plausible claim has been stated that the subscriber to the IP address through which a copyrighted work allegedly was downloaded is liable to Plaintiff." Plaintiff respectfully suggests the Court use the plausibility standard determined by the Supreme Court and the Fourth Circuit when evaluating a 12(b)(6) motions to dismiss, which is essentially the same process that the Special Master would engage. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984) ("This court is strict in its adherence to the precedent of its earlier opinions.")

Specifically, in deciding a 12(b)(6) motion the court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Stroud v. Greystar Mgmt. Services, LP*, 2012 WL 3136214 at *1 (D. Md. 2012) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Under *Twombly* and *Iqbal*, the court should engage in a two-step approach in deciding a 12(b)(6) motion to dismiss. The Court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Next, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (citation omitted).

In determining the plausibility standard for the Special Master, Plaintiff requests the Court consider to what degree it may be appropriate to base plausibility on unverified factual contentions provided by a John Doe defendant, when "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does *not* resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation and citation omitted; emphasis added). For the record, to the extent that the procedure adopted by this Court for determining plausibility is inconsistent with the Supreme Court or Fourth Circuit precedent for determining whether a claim is plausible, Plaintiff respectfully objects to any such deviation from the binding decisional authority.

3

Plaintiff believes it is also important for the Court to consider that while the infringer may not be the subscriber, from Plaintiff's experience, in the overwhelming majority of instances, with very few exceptions, it is either the subscriber or a person residing in the subscriber's home.  Here, most often it will be the subscriber which is what makes Plaintiff's claims plausible.  Indeed, it is the subscriber who pays for the Internet service which is being used to infringe Plaintiff's copyrights.  Further, it is the subscriber who has likely received DMCA notices regarding infringement occurring through the use of the subscriber's Internet.  As discussed in Plaintiff's Written Response to the Court's Show Cause Order, CM/ECF 16, Plaintiff's Complaints are against John Doe Defendants who have infringed Plaintiff's copyrights for extended duration.  The ongoing infringement limits the infringer to an individual that has had constant, unlimited access to the subscriber's Internet.  Almost always, if it is not the subscriber, the infringer is the subscriber's spouse, roommate, relative, or resides in the home with the subscriber, and the subscriber knows who did it.  Plaintiff should not be precluded holding the infringer liable, simply because they are not the subscriber.

As an example, in the Eastern District of Pennsylvania, Plaintiff is preparing for trial against five defendants that Plaintiff has alleged violated its copyright in what the court has termed a "Bellwether" trial.  In that trial, one of the subscribers was substituted as a defendant for her husband, after Plaintiff took the couple's deposition.  *See Malibu Media v. John Does 1, et. al*, 12-cv-02078-MMB (E.D. Pa.) at CM/ECF 110.  Another defendant in the Bellwether trial filed a Motion to Quash and attached a declaration stating that he had an unprotected wireless Internet signal which he secured upon receiving notice from his Internet Service Provider.  Plaintiff was able to then show that the infringement in that defendant's household continued, long after he secured his Internet.  *Id*. at CM/ECF 80.  After realizing this, and reviewing Plaintiff's additional evidence, the defendant filed a declaration with the Court admitting that the infringement was done by a family member and apologizing to Malibu Media for the infringement that took place in his household.  *Id*.[1]

D.  Costs for the Special Master

While Plaintiff is aware that the Court intends to address the logistics of costs in a separate Order, Plaintiff does respectfully suggest that Defendant be required to pay when challenging Plaintiff's plausibility and the Special Master finds that Plaintiff's Complaint is plausible.  This would encourage John Doe defendants to not file frivolous challenges to plausibility when the plausibility issue is obvious on its face.

E.  Considerations for Early Settlement

Plaintiff respectfully suggests that the Court consider that in the vast majority of instances it is in the benefit of the John Doe defendants to have the opportunity to settle early in the case.  On page 2 of the Court's Order, in footnote 3 the Court cites *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded [the copyrighted material].  The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by the ISPs

---

[1] This declaration has since been sealed by the Pennsylvania court to protect the identity of the defendant.  Should the Court wish to view the declaration, Plaintiff will file a redacted copy under seal.

are not those of individuals who actually downloaded or shared copyright material."). As discussed above, Plaintiff understands the Court's concern that sometimes the infringer may not be the subscriber.

That being said, in the majority of instances the infringer will be the subscriber and if not the subscriber will almost always be someone in the subscriber's home who very likely does not wish to litigate a case to which he or she will be found liable. To Plaintiff's knowledge, no other copyright BitTorrent plaintiff in history has ever filed complaints with as much evidence of infringement against the John Doe defendants. Indeed, Plaintiff has spent an enormous amount of time and resources to develop the technology to do so. Using the Southern District of New York court's own statistic, it can be estimated that 70% of the John Doe defendants in these cases are the infringer. The attorney who made these statements quoted by the Southern District of New York was merely stating that perhaps as much as 30% of the time it's someone in the subscriber's home, not that the infringement did not occur in the house. This statistic has been widely misconstrued by courts and used as a basis for denying justice in these cases. Here, requiring that each John Doe defendant provide information regarding the plausibility of the suit to the special master, and then requiring that both the Court and Plaintiff's counsel spend additional time and resources in a Court monitored mediation process, may not be in the best interest of all of the John Doe defendants. Indeed, it will certainly increase the cost of litigation.

As an example, in the Eastern District of Pennsylvania "Bellwether" trial, just today a John Doe defendant filed a motion in limine requesting the court withhold his name from the public, admitting liability and expressing regret that the court did not afford him the opportunity to privately resolve his claims with Plaintiff. *See Malibu Media v. John Does 1, et. al*, 12-cv-02078-MMB (E.D. Pa.) at CM/ECF 158.

While requiring a John Doe defendant go through the Special Master process is not the same as requiring a John Doe defendant to go to trial, in some cases John Doe defendants may prefer to admit liability privately to Plaintiff, settle for a reasonable amount, and stop infringing. Requiring additional time and costs for Plaintiff and the Court, which ultimately the John Doe defendant may bear the burden of repaying, does not benefit anyone.

Plaintiff suggests that should a John Doe defendant wish to settle its case without the Court being involved, it may file a paper requesting that it be allowed to do so and the Court will waive this process. Plaintiff respectfully suggests the Court reconsider whether this process is necessary for every John Doe defendant, particularly John Doe defendants that are represented by counsel. No person other than undersigned will ever have contact with the John Doe defendant's counsel regarding these proceedings. Undersigned is obligated to abide by the bar rules of this state and will not, nor has ever, done anything to jeopardize his good standing. Any John Doe defendant represented by counsel should be adequately prevented from any undue influence.

F. Conclusion

Finally, Plaintiff respectfully takes issue with the Court's order to the extent it can be construed to imply that Malibu Media has engaged in abusive or coercive settlement tactics. In the United States of America every party should be treated the same, including parties that make

adult movies. No court has ever sanctioned Malibu Media for abusive litigation or settlement tactics. Further, no court has ever granted a 12(b)(6) motion dismissing Malibu Media's complaints for failure to state a plausible claim.

The courts that have criticized Plaintiff, have always done so on the basis of hearsay and rumors, often promulgated by defendants seeking to avoid being held accountable and based on the unfounded belief that Plaintiff seeks to profit from its litigation. As Plaintiff has stated in its previous Memorandum, Plaintiff is the victim of an epidemic of copyright infringement through the BitTorrent file distribution network. Scores of other content producers, including prominent movie studios and record labels, have gone out of business because of this widespread infringement. Plaintiff is passionate about its business and refuses to do the same. Plaintiff should not be treated differently than any other victim of tortious conduct merely because it creates adult movies or sues to stop the tortfeasors from continuing to infringe its property.

Plaintiff is again thankful to the Court for this opportunity to present its position. Plaintiff respectfully suggests that the Court maintain flexibility as this process continues and continue to encourage input from all interested parties as this new process is developed.

Dated: May 30, 2013

                Respectfully submitted,

                MALIBU MEDIA, LLC., PLAINTIFF

                By:  /s/*Jon A. Hoppe*
                Jon A. Hoppe, Esquire #6479
                Counsel
                Maddox, Hoppe, Hoofnagle &
                Hafey, L.L.C.
                1401 Mercantile Lane #105
                Largo, Maryland 20774
                (301) 341-2580

                By:  /s/ *M. Keith Lipscomb*
                M. Keith Lipscomb (Fla. Bar. No.429554)
                klipscomb@lebfirm.com
                LIPSCOMB, EISENBERG & BAKER, PL
                2 South Biscayne Blvd.
                Penthouse 3800
                Miami, FL 33131
                Telephone: (786) 431-2228
                Facsimile:  (786) 431-2229