

600 Congress Avenue, Suite 2200
Austin, TX 78701
Telephone: 512-305-4700
Fax: 512-305-4800
www.lockelord.com

Bart Huffman
Direct Telephone: 512-305-4746
Direct Fax: 512-391-4741
bhuffman@lockelord.com

*Via E-mail*

May 30, 2013

Hon. Roger W. Titus and Hon. Paul W. Grimm
United States District Court, District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

    Re:    Memorandum Order dated May 16, 2013
            *Malibu Media, LLC v. John Doe* Cases in the District of Maryland
            Consolidated Cases including *Malibu Media, LLC v. John Doe*, No. 13-cv-362-RWT

Dear Judges Titus and Grimm:

I am writing on behalf of Internet service provider ("Provider") SBC Internet Services, LLC d/b/a AT&T Internet Services ("AT&T") to comment on the procedures proposed in the Court's recent Order. AT&T shares the Court's concerns that (a) the Internet account subscriber is not necessarily a proper copyright infringement defendant because the subscriber is not necessarily the person who committed the allegedly infringing acts and (b) the serial filing of copyright infringement suits similar to those at bar may not be a proper use of the federal courts to the extent that the true purpose of such suits is to harvest coerced settlements based on embarrassment (when pornography is involved), the comparative cost of a defense, and the threat of punitive statutory damages. The federal courts are not mere "cogs in a plaintiff's copyright-enforcement business model." *Malibu Media, LLC v. John Does 1-10*, No. 12-cv-3623, 2012 U.S. Dist. LEXIS 89286, at *9 (C.D. Cal. Jun. 27, 2012), *vacated*, 2012 U.S. Dist. LEXIS 95487 (C.D. Cal. Jul. 10, 2012). The invocation of the authority of the courts must be in connection with actual "cases or controversies" and must not be abused.

This Court should hold firm to its insistence that suits be brought against only one Doe at a time, as other federal courts have increasingly also decided to do. The use of a Special Master is warranted, as are protective measures whenever plaintiffs in these cases are permitted to proceed with their suits. The Special Master can and should (i) carefully scrutinize the plaintiff's allegations, investigator(s), and factual basis for bringing suit; (ii) consider related parties and related lawsuits; and (iii) require certifications from the plaintiff and/or its counsel as appropriate. The Special Master should not, however, serve as an investigator seeking

May 30, 2013
Page 2

information directly from a potential defendant before he or she has been served. In such a role, the Special Master would effectively be gathering facts outside the pleadings for the potential benefit of a plaintiff who, when the suit was filed, lacked sufficient information to state a valid claim against the potential defendant.

## Scrutiny of Plaintiff and its Allegations

Courts in other federal districts have also begun to consolidate these cases and/or to direct that they all be assigned to a particular judge. Increasingly, other courts (like this Court) permit these cases to proceed, if at all, against only one Doe at a time. The underlying judicial decisions are based on improper joinder as well as the courts' observation that the collection campaigns which are driving these lawsuits may not be a proper use of the federal courts. The days when federal courts would routinely grant the plaintiffs' *ex parte*, expedited discovery motions in these cases appear to be all but gone. With the benefit of experience, federal courts today are far more likely to carefully scrutinize a plaintiff and its claims before authorizing discovery of a subscriber's personal information.

A good, very recent example is *Zembezia Film Ltd. v. Does 1-66*, No. 13-cv-0311, 2013 WL 1964816, at *1 (W.D. Wash. May 10, 2013), a decision by Judge Robert S. Lasnik, to whom all BitTorrent copyright cases in the Western District of Washington have been referred for pretrial handling. In *Zembezia Film*, Judge Lasnik expressed his concerns regarding "the appropriateness of joinder and the possibility that the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties" and issued an order for the plaintiff to show cause why all defendants other than Doe 1 should not be dismissed "for improper joinder and/or pursuant to the [c]ourt's inherent authority to control its docket." *Id.* at *1-2. Judge Lasnik also ordered the plaintiff to refrain from further communications with Doe defendants (and any other use of their identifying information, no matter how obtained) absent prior approval of the court, and to disclose to the court various details regarding the plaintiff's copyright interest, standing, and direct and indirect owners. *Id.* Notably, the copyrighted work at issue in *Zembezia Film* is an animated children's movie, not pornography. *See Id.* at *1.

In similar fashion, Judge James S. Gwin, presiding over consolidated cases in the Northern District of Ohio, recently observed that:

> Courts have been troubled by what amounts to be a new business model employed by production companies 'misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims.'

*Safety Point Prods., LLC v. Does 1-14, Does 15-96, Does 97-177, Does 178-197*, Nos. 12-cv-2812, 12-cv-2820, 12-cv-2831, 12-cv-2894, 2013 WL 1367078, at *3 (N.D. Ohio Apr. 4, 2013) (*quoting Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012)). In addition to issues of permissive joinder and whether the joinder of multiple defendants "would otherwise deprive the Court of a just result," Judge Gwin was not convinced that the plaintiff had pleaded a

May 30, 2013
Page 3

*prima facie* case of copyright infringement where the plaintiff relied solely on an "IP address snapshot" as the justification for bringing suit. *Safety Point Prods., LLC*, 2013 WL 1367078, at *3; *see also id.* at *3 n.36 ("Even beyond the issue of joinder, this Court would hesitate to subpoena the ISPs without further information regarding Defendants' alleged conduct.").

In consolidated cases in the District of Oregon concerning alleged infringement of the action movie Maximum Conviction, Chief Judge Ann Aiken observed what "appears to be . . . a somewhat underhanded business model [of the plaintiff] to raise profits for what may be a less than profitable, unpopular movie[]." *Voltage Pictures, LLC v. Does 1-198, Does 1-12, Does 1-34, Does 1-371*, Nos. 13-cv-290, 13-cv-292, 13-cv-293, 13-cv-295, 2013 WL 1900597, at *4-5 (D. Or. May 4, 2013) (discussing demand letter and "threats regarding severe punitive damages . . ." in what appears to be a tactic "to utilize the court's subpoena powers to drastically reduce litigation costs and obtain, in effect, $7,500 for its product which, in the case of Maximum Conviction, can be obtained for $9.99 on Amazon for the Blu-Ray/DVD combo or $3.99 for a digital rental."). Judge Aiken opined that a "reverse class action" of multiple defendants would not be appropriate, especially given that infringers may have different levels of culpability, that an identified subscriber may not be the actual infringer, and that a full download is not necessarily accomplished by "mere participation in a given swarm." *Id.* at *1, *5 n.2.[1]

As these and other federal courts have recognized, the circumstances of these cases warrant a careful examination of plaintiff's allegations[2] and evidentiary showings[3] before permitting

---

[1] Other opinions in consolidated cases have likewise expressed disapproval of the plaintiffs' apparent motivations in bringing these suits, and have declined to permit the suits to proceed against multiple Doe defendants. *E.g.*, *In re BitTorrent Copyright Infringement Cases*, Nos. 12-cv-1188, 12-cv-1189, 12-cv-1258, 12-cv-1259, 12-cv-1260, 12-cv-1280, 12-cv-1281, 12-cv-1341, 12-cv-1342, 12-cv-1398, 12-cv-1493, 2013 WL 501443, at *1, *3-6 (C.D. Ill. Feb. 11, 2013); *In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-cv-3995, 12-cv-1147, 12-cv-1150, 12-cv-1154, 2012 WL 1570765, at *1, *5-6, *9-14 (E.D.N.Y. May 1, 2012).

[2] *See, e.g., Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 201 (N.D. Ill. 2012) (Holderman, Chief J.) (stating, in connection with denial of motion to alter or amend a judgment, that: "[T]he court is still not convinced that the plaintiffs are seeking discovery about the non-parties for use in the underlying litigation against the Doe defendants. As the court explained in its [original] order, it appears that the plaintiffs' goal is instead 'to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals.'").

[3] *See, e.g., AF Holdings v. John Doe*, No. 12-cv-5709, 2012 U.S. Dist. LEXIS 151730, at *3 (C.D. Cal. Oct. 19, 2012) (requiring plaintiff to demonstrate "how it would proceed to uncover the identity of the actual infringer once it has the subscriber information . . . while also considering how to minimize harassment and embarrassment of innocent citizens."); Minute Order, *Guava, LLC v. John Doe*, No. 12-cv-01661 (D.D.C. Oct. 18, 2012) (Howell, J.) (requiring "sworn declaration setting forth the basis for the plaintiff's allegation"); Notice at 1, *XPays, Inc. v. Does 1-34*, No. 12-cv-0928 (S.D. Ill. Sep. 4, 2012), ECF No. 12 (per request of the court, addressing topic of: "Did plaintiff's investigator upload the film to any of the Does in this action?"); *Celestial Inc. v. Swarm*, No. 12-cv-0128, 2012 WL 995267, at *2-3 (C.D. Cal. Mar. 23, 2012); Order Dismissing Case for Lack of Personal Jurisdiction, *Celestial Inc. v. Swarm*, No. 12-cv-0128 (C.D. Cal. May 1, 2012), ECF No. 11 (one of fifteen related cases dismissed for

May 30, 2013
Page 4

expedited discovery of subscribers' identifying information. These circumstances[4] may also warrant the collection of additional information from the plaintiff, including details regarding the plaintiff and its standing, the investigation which allegedly forms the basis of suit, and the commercial value of the underlying work. More specifically, the Court, through a Special Master, might (i) require the plaintiff to demonstrate that its identification of IP addresses is based on accurate technology (including a demonstration that an Internet user associated with a given IP address actually downloaded the entire work); (ii) require the plaintiff to establish that it is entitled to statutory damages or a particular range of actual damages; (iii) require the plaintiff's counsel to disclose direct and indirect owners of the plaintiff, its investigator, and rights in the subject copyrighted work; and/or (iv) require the plaintiff and its counsel to certify that they have not directly or indirectly caused or participated or acquiesced in the introduction or continued availability of the work in a BitTorrent or similar file-sharing service, and require them to disclose all potentially relevant information that they or their investigators have regarding such initiating dissemination (*i.e.*, "seeding") of the work.

## Supervision of Settlement Communications

Like this Court, other federal courts have deemed it appropriate to supervise settlement discussions in these cases. *E.g.*, *Zembezia Film Ltd.*, 2013 WL 1964816, at *1 (requiring plaintiff to "file under seal all correspondence or other written communications (including emails) sent to

---

failure to make adequate showing as to personal jurisdiction), *appeal docketed*, No. 12-55966 (9th Cir. May 25, 2012).

[4] Courts have responded strongly to clearly overreaching and/or sanctionable behavior. *See, e.g. Ingenuity 13, LLC v. John Doe*, No. 12-cv-8333, 2013 WL 1898633, at *2, *4-6 (C.D. Cal. May 6, 2013) (issuing severe sanctions in consolidated cases described as "boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort."); *Patrick Collins, Inc. v. John Does 1-25*, No. 11-cv-60571, 2012 WL 27586, at *2-3 (S.D. Fla. Jan. 4, 2012) (dismissing case without prejudice where plaintiff's attorney filed a joint scheduling report purporting to bear the signature of a defendant, but the defendant had not, in fact, signed the joint scheduling report); Order Denying Mot. to Strike Notice of Noncompliance, Referring Pl.'s Counsel to the Florida Bar and the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance, and Denying Mot. to Stay and Reconsider the Court's Aug. 2, 2012 Order, *Bubble Gum Prods., LLC v. Does 1-80*, No. 12-cv-20367 (S.D. Fla. Sep. 10, 2012), ECF No. 50 (referring plaintiff's counsel to disciplinary authorities to investigate whether sending a demand letter after the court's dismissal of claims violated applicable professional responsibility rules); *Raw Films v. Does 1-32*, No. 11-cv-0532, 2011 WL 6182025, at *2-3 (E.D. Va. Oct. 5, 2011) (ordering plaintiff to show cause why Rule 11 had not been violated in connection with settle-or-dismiss practices and stating: "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them."); *Mick Haig Prods, e.K. v. Does 1-670*, No. 10-cv-1900, 2012 WL 213701 (N.D. Tex. Jan. 24, 2012), *aff'd* 687 F.3d 649 (5th Cir. 2012) (describing "strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars – a tactic that [the sanctioned attorney] has employed all across the state and that has been replicated by others across the country.").

May 30, 2013
Page 5

defendants and a summary of any oral communications" and "refrain from any further oral or written communications with defendants unless expressly approved by the Court in advance."); Order at 8, *Quad Int'l, Inc. v. John Doe, Ingenuity 13 LLC v. John Doe, AF Holdings LLC v. John Doe*, Nos. 12-cv-2681, 12-cv-2682, 12-cv-2683, 12-cv-2684, 12-cv-2685, 12-cv-2686, 12-cv-2687, 12-cv-2688 (D. Minn. Nov. 28, 2012), ECF No. 14 (requiring plaintiff to disclose settlement communications within one day in a filing under seal with the court).[5] Such supervision would be particularly appropriate as part of the Court's proposed procedures, because a plaintiff-favorable preliminary finding by the Special Master might otherwise be used as additional leverage in settlement discussions.

### Other Comments Regarding the Proposed Procedures

As an initial matter, AT&T requests the Court to consider the basis of its authority to directly order non-party Providers to preserve information, give notices, or produce information directly to the Court. Although Providers would presumably preserve information upon receiving even an informal notice from the Court, the non-party Providers are not before the Court such that they could be subject to a mandatory injunction, and we are not aware of any applicable authority outside of Rule 45 for obtaining discovery from a non-party in these cases.[6] Instead of a direct order to the Providers, perhaps the Court's procedures could commence with an order authorizing the plaintiff to issue a Rule 45 subpoena to the Providers,[7] returnable for pre-disclosure review *in camera* pursuant to a protective order. Upon receiving subpoenas, those Providers who are "cable operators" would be obligated to give notice to their subscribers pursuant to the Cable Privacy Act, and Providers such as AT&T would give notices to their subscribers pursuant to such Providers' own policies and practices. In any event, under applicable privacy policies and privacy laws, any disclosure by a non-party Provider of a subscriber's personally identifiable information should be made pursuant to a demonstrably valid court order.

Beyond that, AT&T agrees that protective measures such as those suggested by the Court are appropriate in the event the suits move forward. Conditioning release of identifying information on supervision of settlement discussions is particularly appropriate, as discussed above. With

---

[5] *See also, e.g., Millennium TGA v. Comcast Cable Comm'cns*, 286 F.R.D. 8 at 15 (D.D.C. 2012) (analyzing letters sent by plaintiffs' counsel in other cases, and stating: "Given the intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed.").

[6] The Cable Privacy Act does not provide such authority (although the Act does contemplate that a court must authorize certain discovery – presumably by authorizing the issuance of third-party discovery requests for such information, to be obtained pursuant to Rule 45 – before a "cable operator" may provide it). 47 U.S.C. § 551(c)(2)(B). In any event, the Cable Privacy Act does not apply to Providers who are not "cable operators." *See id.* § 551(c)(2).

[7] Subpoenas issued pursuant to Rule 45 are subject to the rights and protections of that Rule, including the opportunity to object and provision for cost recovery. FED. R. CIV. P. 45(c)(1), (c)(2)(B).

May 30, 2013
Page 6

respect to protecting the identity of the subscriber from disclosure in connection with an amended complaint, it may be preferable from the perspective of public access to records not to seal the amended complaint but instead to permit any served defendants to proceed anonymously or using a pseudonym until trial.

With respect to the difficult question of whether there is sufficient evidence to name and treat a subscriber as an alleged infringer, an intermediary or *ad litem* approach may be the best that can be done under existing laws. Notably, unlike an attorney *ad litem*, the Special Master cannot provide legal advice to the subscriber. And, if the Special Master were to seek information from the alleged infringer, such inquiries would be akin to a judicial investigation to determine whether the accused had violated the federal copyright laws. Although the Special Master would be conducting the investigation in the context of a civil lawsuit, the alleged civil copyright violations may also give rise to alleged violations of criminal law. 17 U.S.C. § 506; 18 U.S.C. § 2319.

Ultimately, the assertion of a valid claim against a specific individual is the plaintiff's responsibility. We respectfully submit that the most productive use of the Court's limited resources in these cases is directed to a careful examination of the allegations, factual basis, and pertinent motivating and financial interests of the plaintiff, its counsel, and their investigator.

\* \* \* \* \*

AT&T appreciates Your Honors' thoughtful consideration of the issues and concerns presented by these cases. Initiatives such as those undertaken by the Court should go a long way towards curtailing the abuses that have occurred in the past.

Respectfully submitted,

Bart W. Huffman