**UNITED STATES DISTRICT COURT**

**DISTRICT OF MARYLAND**

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No. 8:13-cv-0360-RWT |
| Plaintiff, | Hon. Roger W. Titus |
| v. | |
| JOHN DOE, | |
| Defendant. | |

**MOTION FOR LEAVE TO PROCEED ANONYMOUSLY**

Comes now the Internet user who pays the bill for the account associated with IP address 68.50.250.243 who Malibu Media accuses of being the John Doe defendant in this action ("Movant"), by and through counsel, to move the court for leave to proceed anonymously, and shows the Court as follows:

**I.  INTRODUCTION**

This case is one of the many pornographic BitTorrent copyright infringement cases filed by Malibu Media, LLC in this district and across the country.  Unlike some of the other cases filed by other adult entertainment companies, Malibu Media now generally sues defendants one at a time. Accordingly, here, there is no issue as to impermissibly joined defendants.  Likewise, although there are arguments as to why the instant subpoena seeking to identify Movant, which was authorized by this

Court, might be quashed, Movant declines to make those arguments or object to the instant subpoena.

Instead, what Movant asks is that the Court allow Movant to proceed anonymously through the close of discovery and dispositive motions. Malibu Media will soon obtain Movant's identity via the subpoena return (or through undersigned counsel, who will tender it, if Malibu Media so desires). Movant would also be happy to lodge his identity with the Court under seal.[1] Thus, the focus of the instant motion is whether Movant will be ***publicly*** identified at this stage of the litigation in this pornography case. Movant asks that until the close of discovery and dispositive motions, Movant only be identified publicly using the pseudonym "John Doe".

Malibu Media's counsel here has authorized the undersigned to report that ***Malibu Media does not oppose the relief sought in the instant motion***. Nationally, Malibu does not oppose such motions anymore, and several Judges in the Northern District of Illinois and in the Eastern District of Michigan (two popular venues for this kind of litigation) have recently granted such motions in Malibu Media cases. *See Malibu Media, LLC v. Reynolds, et al.*, N.D. Ill. No. 1:12-cv-6672 (ECF No. 51) (Kendall, V.); *Malibu Media, LLC v. John Does 1-37,* N.D. Ill., No. 1:12-cv-06674 (ECF No. 33) (Feinerman, G.); *Malibu Media, LLC v. John Doe*, E.D. Mi. No. 2:13-

---

[1] Per the Court's order herein at ECF No. 35, an "*Ex Parte* Notice of Identity and Current Address" (*see* specimen at ECF No. 31-1) listing Movant's contact information will be sent to the Court via overnight mail, to accompany the filing of this motion.

cv-11432 (ECF No. 16) (Drain, G.); *Malibu Media, LLC v. John Doe*, E.D. Mi. No. 2:13-cv-12201 (ECF No. 17) (Grand, D.).

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is one of nearly 1,000 copyright infringement actions that Malibu Media, LLC has filed since 2012.  In these cases, Malibu alleges that unknown Internet users, identified only by IP addresses, downloaded Malibu Media's pornographic movies using a file sharing protocol called BitTorrent.  Malibu Media, through a third party firm called IPP, logs the IP addresses of people who download its movies and then files suit against those IP addresses in federal court.  Malibu then seeks leave to issue a subpoena to the ISP that issued the IP address, to identify the person who pays the bill for the account to which the IP address at issue was assigned.

Crucially, just because someone happens to pay the Internet bill for his or her household, does not mean that he or she is the person who was using an IP address at a given time to download a movie on BitTorrent.  "IP subscribers are not necessarily copyright infringers." *VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, *3 (N.D. Ill. Apr. 29, 2011). "Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect ... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."  Id. at *4; *see also Hard Drive*

*Prods. v. John Doe*, Civ. A. No. 11 CV 8333, 2012 U.S. Dist. LEXIS 89937, *6 (N.D. Ill. June 26, 2012).  Forensics firms often misidentify innocent subscribers as infringers for other reasons, including:

1. IP addresses and timestamps that do not reliably identify the correct party;

2. An ISP subscriber with dynamic IP addressing through its website host shares its IP address with several other subscribers; and

3. Anyone with wireless capability can use a subscriber's wifi network to access the Internet, giving the impression that it is the subscriber who is engaged in potentially wrongful acts.[2]

Here, the complaint was filed on February 1, 2013 (ECF No. 1) along with a motion for leave to take early discovery (ECF Nos. 3–4).  The Court then conducted coordinated briefing in the many related Malibu Media cases, inviting amicus to appear, and fashioned a procedure applicable to this kind of case, subjecting Malibu to certain conditions.  ECF No. 31.  Malibu then re-filed a new complaint and sought leave to conduct new discovery (ECF No. 33), which was granted subject to the conditions developed by this Court (ECF No. 35), and then resulted in the issuance of the instant subpoena.

---

[2] *See* Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or Why My Printer Received a DMCA Takedown Notice*, Proceedings of 3rd USENIX Workshop on Hot Topics in Security, at 3 (2008) (available at http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf)

The papers Movant received from his ISP did not include the court-mandated "*Ex Parte* Notice of Identity and Current Address" (*see* specimen at ECF No. 31-1), which the ISP subscribers are supposed to use to provide the Court with their identifying information.  Instead, the papers Movant received from his ISP (which the ISP presumably received directly from Malibu attached to the subpoena) included Malibu's "Exculpatory Evidence Request Form" (ECF No. 34-4), which asks for not just a name and address, but also gets into substantive discovery.  This may be an inadvertent mistake given the volume of subpoenas Malibu processes and their usual procedure. However, taking a cynical view, one might also suppose that what Malibu is really up to insofar as it attaches this form to its complaints and includes it along with its ISP subpoenas is that Malibu hopes unsophisticated ISP subscribers will mistakenly complete and return the form—here, first to the Court, but then the information might be turned over to Malibu. Hopefully, as far as Malibu is concerned, the ISP subscribers will unwittingly incriminate themselves or others by completing the form, thinking that it is required to do so, without a proper warning that the information might be used against them or their family.  In other words, the "Exculpatory Evidence Request Form" is, in effect, a sneaky way to solicit discovery outside the bounds of the Federal Rules of Civil Procedure and it is an end run around this Court's more specific discovery procedure for these cases, which limits pre-complaint discovery beyond the ISP subpoena to a single, one-hour

deposition.  Such subtle departures from the rules, whether inadvertent or not, but all of which help Malibu obtain subscriber information more easily, seem to happen with regularity in Malibu cases.

As with all Malibu Media lawsuits, the copyrights at issue here correspond to titles found on the X-Art.com website.  A quick search for any of the titles at issue here on the X-Art.com website turns up preview clips of movies showing nude models engaged in graphic sexual intercourse.

//

### III. ARGUMENT

There exists a presumption that the identity of parties to litigation is public information.  However, that presumption, including the presumption that there would be prejudice to the opposing party from the concealment, may be rebutted by showing that the harm to the party seeking to proceed anonymously exceeds the likely harm from concealment. *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *see Does I thru XXII v. Advanced Textile*, 214 F.3d 1058, 1068–69 (9th Cir. 2000) (use of pseudonyms appropriate to guard against risk of personal embarrassment); *James v. Jacobson*, 6 F.3d 233, 238–39 (4th Cir. 1993) (court should consider whether asserted justification to proceed anonymously is "merely to avoid the annoyance that may attend any litigation," or if it is to preserve privacy in a sensitive and highly personal matter); *cf. Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (holding that petitioner's fear of retaliation against him and his family members is sufficient to allow use of pseudonyms).

As one court noted in a similar case involving allegations that a John Doe defendant had downloaded pornography using BitTorrent, "[R]equests for pseudonymity have been granted when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature." *Third Degree Films*, 2011 U.S. Dist. LEXIS 128030, at *11 (N.D. Cal., Nov. 4, 2011) (citation omitted).  "An allegation that an individual illegally downloaded adult entertainment likely goes to

[such] matters." *Id.* Anonymity is required to protect Movant's privacy. "Defendants' motions to quash subpoenas for the very purpose of protecting their identifying information ... should be allowed to proceed anonymously because assessing these preliminary matters without knowing defendants' identities causes plaintiffs no harm." *CineTel Films, Inc. v. Does 1-1,052*, Civil No. JFM 8:11-cv-02438, 2012 U.S. Dist. LEXIS 47701, *5 n. 2 (D. Md. Apr. 4, 2012).   Such exceptional circumstances exist in the instant case.

Most cases dealing with anonymity, like *Doe v. City of Chicago*, involve attempts by the *plaintiff* to remain anonymous.   A major component of the concern about parties proceeding anonymously involves a concern about plaintiffs attempting to access the federal courts without revealing their identities.   In this case, however, it is a *defendant* who wishes to proceed anonymously.

In the past year no fewer than three judges in the Northern District of Illinois have expressly ruled on this issue and granted motions seeking the same relief being requested here.   See *Malibu Media, LLC v. Reynolds, et al.*, N.D. Ill. No. 1:12-cv-6672 [ECF No. 51] (Kendall, V.); *Malibu Media, LLC v. John Does 1-37*, N.D. Ill. No. 1:12-cv-06674 [ECF No. 33] (Feinerman, G.); and *Sunlust Pictures, LLC v. Does 1-75*, 2012 U.S. Dist. LEXIS 121368, *14-15 (N.D. Ill. August 27, 2012) (Tharp, J.).

Judge Kendall noted that permitting a John Doe defendant to proceed anonymously is especially appropriate where there is an increasing amount of uncertainty as to whether the IP address identified by Malibu Media's investigators actually reflects activity performed by the subscriber to that address.   "Upon balancing the potential embarrassment to Doe 15 and the possibility that Malibu Media could use inappropriate litigation tactics to 'coerce' a settlement, against the public's interest in knowing Doe 15's true identity and the risk of unfair prejudice to Malibu Media, the Court finds that allowing Doe to proceed by pseudonym is, at least at this state of the proceedings, appropriate."  *Malibu Media, LLC v. Reynolds, et al.*, 1:12-cv-6672 [ECF No. 51, *13-14]

Judge Tharp noted that these cases involve "matters of a sensitive and highly personal nature," that the harm to the public interest in allowing the John Doe defendant to remain anonymous was small, and that the plaintiff would not be prejudiced by his ruling.  *Sunlust Pictures, LLC v. Does 1-75*, 2012 U.S. Dist. LEXIS 121368, *14-15 (August 27, 2012).  Judge Tharp also expressly noted that a disputed allegation that a John Doe defendant illegally downloaded (and presumably viewed) pornography fit into the framework of other cases in which anonymous litigation was permitted.  Id., *citing Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979).  Moreover, as a

defendant, Movant has not purposely availed himself of the courts, and the public's interest in the proceeding is therefore lower.

The recent decisions from the Northern District of Illinois allowing defendants to proceed anonymously in Malibu Media cases is also in accord with precedent applied by courts in other circuits. Other courts have noted that the allegation that someone views sexually explicit pornography is a matter of a "sensitive and highly personal nature," which is materially embarrassing, if made public. *See Next Phase Distrib., Inc. v. Doe*, 2012 U.S. Dist. LEXIS 27260, 4-6 (S.D.N.Y. Mar. 1, 2012) ("This Court notes the highly sensitive nature and privacy issues that could be involved with being linked to a pornography film"); *citing Third Degree Films v. Doe*, 2011 U.S. Dist. LEXIS 128030 (N.D. Cal. Nov. 4, 2011) ("An allegation that an individual illegally downloaded adult entertainment likely goes to matters of a sensitive and highly personal nature, including one's sexuality"); *see also In re: BitTorrent Adult Film Copyright Infringement Cases*, E.D.N.Y. Case No. 12-1154-ADS-GRB, ECF No. 28, 12/03/2012 ("*In re: Adult Film Cases III*") (examining BitTorrent cases dealing with leave to proceed anonymously and granting Doe defendant's motion for leave to proceed anonymously); *Does I thru XXII v. Advanced Textile*, 214 F.3d 1058, 1068–69 (9th Cir. 2000) (use of pseudonyms appropriate to guard against risk of personal embarrassment); *In re: Complaint of Judicial Misconduct (Kozinski)*, 575 F.3d 279, 283–84 (3rd Cir. 2009)

(allegations that judge possessed sexually explicit offensive material presented a "serious risk of public embarrassment. . .that can reasonably be seen as having resulted in embarrassment to the institution of the federal judiciary").

The circumstances pertaining to Movant are exceptional, and he should be permitted to proceed anonymously.  Simply, given the salacious nature of the content at issue, this kind of case always has the potential to turn a defendant with meritorious defenses into an immediate loser, simply by virtue of being linked to what many might consider to be sexually deviant behavior.  Further, being named in a federal lawsuit, particularly a materially embarrassing one, is the kind of thing it is difficult if not impossible to erase from Internet search results, in the age of PACER and related recap sites.

Allowing Movant to proceed anonymously through discovery and dispositive motions will not prejudice plaintiff whatsoever, and there is little if any harm to the public interest in public court proceedings.  On balance, in this kind of case, a reasonable request such as this one should be granted, in order to help level the playing field and protect John Does—many of whom are inaccurately identified and did nothing wrong—from material embarrassment.

## IV.  CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant the instant motion, which plaintiff has indicated it will not oppose, and allow

Movant to proceed anonymously through the close of discovery and dispositive motions.

Respectfully submitted,

DATED:   October 19, 2013

**THE PIETZ LAW FIRM**

*/s/ Morgan E. Pietz*

Morgan E. Pietz (Cal. Bar No. 260629)*
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

*\*Application for Admission Pending*

Attorneys for Putative John Doe

**JOHN LOWE PC**

*/s/ John C. Lowe*

John C. Lowe (Md. Bar No. 12409)
5920 Searl Terrace
Bethesda, MD 20816
johnlowe@johnlowepc.com
Telephone:  202-251-0437
Facsimile:   301-320-8878

*Local Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

*/s/ John C. Lowe*
John C. Lowe

DATED:   October 19, 2013